JUDGE HARDIN
delivered the opinion of the court:
In an action of Pointer, Fisher & Co. against McCracklin, an order was made appointing Chatham a commissioner to sell a lot of pork in controversy and report his actings to court. Chatham, after hearing some propositions to buy of him, one of them being an offer of sixteen hundred dollars for the pork, seems to have declined to act as commissioner, and thereupon Harris was appointed in his place. No part of the suit being exhibited, the character of the order appointing the commissioner can only be inferred from the references madé to it by the pleadings in this case, from which it does not appear whether the commissioner was .directed to sell the pork publicly or privately, nor on wrhat terms.
It appears, that, on the 23d day of April, 1856, the commissioner, Harris, and Chatham and McCracklin, *424 were together at the house pf Harris, when the latter agreed to sell the pork to Chatham at the price of fourteen hundred dollars or fourteen hundred and fifty dollars; and, immediately thereafter, the following agreement was executed:
“ This article of agreement witnesseth, that Wm. H. Chatham hath this day agreed with R. G. Harris and Jas. B. McCracklin, and by this doth agree, that said Harris and McCracklin shall be, and they are, full and equal partners with said Chatham in the purchase of a certain lot of meat bought by said W. H. Chatham of said Harris, as commissioner of the Daviess circuit court.
“ Given under our hands 23d April, 1856.
“ Wm. PI. Chatham,
“ Robert G. Harris,
“ James B. McCracklin.”
The pork having been disposed of by the firm, Plarris brought a suit against Chatham and McCracklin, alleging, in substance, that the sales had realized such a profit that his equal share of the net proceeds amounted to the sum of three hundred and eighty-two dollars and eighty-six cents, for which he prayed judgment against Chatham, in whose hands he alleged it was.
Subsequently, Pointer, Fisher & Co., to whom the pork originally belonged, were admitted as parties to the suit, and filed a cross-petition, founded in part on the facts disclosed by the petition and exhibits filed by Harris, and sought to recover of Chatham, Harris, and McCracklin, the whole amount of the net profits realized on the pork, on the ground that the sale from Harris as commissioner was made in pursuance of a fraudulent combination and collusion between Plarris, Chatham, and McCracklin to obtain the pork for an inadequate price for their joint benefit.
*425 Afterwards, at the February term, 1863, an order was made dismissing the cause, without prejudice as to W. H. Chatham; but, by a subsequent order, process was awarded against him on the cross-petition, to which he filed an answer on the 4th of March, 1864, controverting the charges of fraud and collusion, but not relying on the order dismissing the action, which, if in itself liable to a different construction, was acquiesced in by the parties as an order simply dismissing the original petition as to Chatham, but retaining the cross-petition of Pointer, Fisher & Co., and it must be so regarded by this court.
Harris also filed an answer denying the alleged fraud and collusion; but McCracklin does not appear to have been brought before the court.
On the pleadings and exhibits referred to the court rendered a judgment in favor of Pointer, Fisher & Co., for eleven hundred and fifty-one dollars and seventy-three cents against Harris and Chatham, who have appealed to this court.
The question of collusion and fraud in the sale of the pork by Harris as commissioner, presents the material issue to be determined.
Notwithstanding the denials of the answers, which are deemed sufficient to impose on the appellees the burthen of proving' the alleged fraudulent combination, the facts admitted by the appellants strongly conduce to that conclusion. Why the commissioner should have been satisfied that Chatham was paying a full and adequate price for the pork, and at the same time should have found inducements to become his partner in it for the purpose of speculation, is not satisfactorily explained while the large profits admitted to have been realized furnish intrinsic evidence of bad faith on the part of the commissioner; and the fact that Chatham, while expected to *426 act as commissioner himself, had been offered a larger sum for the pork than that paid by him to Harris, is unfavorable to the inference of fairness on his part.
It is against the policy of the law to permit the officers and agents of the court to employ their authority as such for purposes of speculation or gain to themselves; and the fact alone that Harris became a partner with the purchasers on the very day of the sale, is a circumstance “ pregnant with the suspicion of fraud.”
But the contract of partnership states that Harris and McCracklin “ are full and equal partners with said Chat-ham in the purchase,” &c., the plain import of which is, that they united as co-purchasers with Chatham of property sold by one of them as commissioner; in other words, that Hands united in buying the pork of himself.
There being no evidence in the cause tending to repel the inference of a fraudulent combination between the appellants and McCracklin, which the facts and circumstances mentioned so strongly conduce to establish, we are constrained to concur in the conclusion of the circuit court.
Wherefore, the judgment is affirmed.